[Cite as *Wilfong v. Bush*, 2023-Ohio-1256.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| SHYNA WILFONG, | : | APPEAL NO. C-220308 |
| | | TRIAL NO. F16-2192Z |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| BRANDON BUSH, | : | |
| | | |
| Defendant-Appellee. | : | |


Appeal From:    Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: April 19, 2023


*Law Offices of Nicholas A. Kulik, LLC,* and *Nicholas A. Kulik*, for Plaintiff-Appellant,

*Arnold Law Firm, LLC*, and *Britt Born*, for Guardian ad Litem.

**KINSLEY, Judge.**

{¶1} In this appeal we are asked to determine whether the trial court erred when it suspended the parenting time of Shyna Wilfong ("mother") with her children, R.W. and B.B. Finding no abuse of discretion in the trial court's decision to suspend mother's parenting time, we affirm the trial court's judgment.

*Factual and Procedural Background*

{¶2} R.W. and B.B. are the children of mother and Brandon Bush ("father"). The Hamilton County Department of Job and Family Services ("HCJFS") first became involved with the family in 2016, after mother used a taser on father at a grocery store. HCJFS was granted temporary custody of R.W. and B.B., and they were placed in the care of their paternal grandmother. In June of 2018, father was awarded legal custody of the children upon both his own motion and the motion of HCJFS to terminate temporary custody and award legal custody to father. The juvenile court magistrate who awarded legal custody to father also granted parenting time to mother in accordance with a "Parenting Time Agreement" submitted by the parties.

{¶3} After father received custody, mother filed numerous motions alleging child abuse by father and that father was in contempt of visitation. All motions were denied.

{¶4} On March 2, 2020, father filed a motion to terminate mother's visitation. And on March 13, 2020, mother filed a motion to modify custody. In February of 2021, while these motions were pending, R.W. suffered a traumatic injury while in mother's care. As a result of the incident, R.W. was hospitalized, placed on a ventilator, and suffered from seizures and an orbital fracture. B.B. also had bruising on her face that same night. Mother has given conflicting reports as to what caused

R.W.'s injuries. After R.W.'s injury, a magistrate issued an order granting an emergency motion to suspend mother's visitation rights.

{¶5} In December of 2021, a joint hearing was conducted on father's motion to terminate mother's visitation and mother's motion to modify custody. At the hearing, father testified that he wanted mother's visitation modified in part because of her vindictive nature and her hatred of father. He discussed the multiple contempt motions that mother filed against him, and he told the court that mother encouraged B.B. lie to detectives when filing sexual-assault charges—which were later found to be frivolous—against him. Father also testified that mother has initiated violent acts against him in front of the children, including tasing him, and that he has previously obtained a restraining order against mother.

{¶6} Father additionally testified that mother kept the children and refused to return them to his care from January to March of 2020. During this period, father received reports from the children's school that R.W. engaged in acts of self-harm, including biting and smacking himself, and that B.B. was in a state of depression. Father also noticed that R.W. developed a nervous tic during this time.

{¶7} R.W. has autism, is nonverbal, and suffers from cerebral palsy. According to father, R.W. has sensory issues that were negatively affected by the environment at mother's home, which included loud music and people running in and out of the house. According to father, R.W. becomes visibly anxious when being transported to mother's home.

{¶8} Father testified about his concerns for the traumatic injury that R.W. suffered while in mother's care. Father also discussed the services that he has participated in and told the court that he has completed the Talbert House Fatherhood

Program as well as parenting classes. According to father, mother is unwilling to coparent with him.

{¶9} Mother, in turn, testified that father has withheld the children from her and at times would only let her see the children when he needed money from her. She told the court that she has concerns with father's aggression, and that the children have often returned from their time with father with injuries that father has no explanation for.

{¶10} Mother addressed the injury that R.W. suffered while in her care, but she was unable to provide a concise explanation for what caused the injury. According to mother, R.W. and B.B. had gone downstairs to get popsicles. Around that time, a curtain fell, but mother stated that it did not hit R.W. Mother stated that R.W. ate his popsicle and watched cartoons before beginning to vomit. Because R.W. appeared disoriented and was not responding to her, she called 911. Mother stressed that the children were never injured when in her care other than this incident.

{¶11} Mother acknowledged that R.W. experiences nervous tics, but stated that they appeared for the first time when R.W. was at his paternal grandmother's house. She explained that she had R.W. examined and was told that the tics could occur for numerous reasons, including if R.W. overexerted himself, and that she should monitor the issue. Mother testified that she is able and willing to adhere to a parenting schedule and to take the children to doctor's appointments. She also discussed the services that she has participated in, stating that she was successfully discharged from the Talbert House for meeting her treatment goals, that she is enrolled in the Women Helping Women Program, and that she has submitted to the

recommended drug screens. Mother stated that she has tested positive once for marijuana, but that she has a prescription for the drug.

{¶12} Maria Turner, the guardian ad litem for R.W. and B.B., testified that it was her opinion that father should retain custody of the children and that visitation with mother should be limited until the investigation into R.W.'s injury was completed, at which point mother should have supervised visits with the children while engaging in services recommended by HCJFS. Turner stated that during her investigation of this case, she was told by a detective that mother has a history of making false allegations and that there is a concern that mother is grooming B.B. to make false allegations of sexual abuse against father.

{¶13} Turner discussed issues concerning the children's schooling, stating that mother failed to participate in meetings for R.W. concerning his Individualized Education Plan, and that truancy letters from the children's school coincided with the time that they remained solely in mother's care. She testified that, although she has no concerns with mother's physical residence, she has concerns for the children's safety when in mother's care, particularly because mother has been unable to explain how R.W. was injured. Turner does not have similar concerns for the children's safety when they are in father's care. She additionally testified that she notices a difference in the children's behavior based on which parent they are with, stating that R.W. appears timid and sad with mother, but is seemingly happy with father.

{¶14} Following the hearing, the magistrate issued a decision denying mother's motion to modify custody. He found that mother failed to demonstrate that a change in circumstances occurred, which was a necessary requirement for a change in custody. He further found that even if there had been a change in circumstances, a

consideration of the relevant best-interest factors supported custody remaining with father. The magistrate granted father's motion to terminate mother's parenting time. He found that a consideration of the factors in R.C. 3109.051(D) supported a determination that a suspension of mother's visitation was in the children's best interest.

{¶15} Mother filed an objection to the magistrate's decision with respect to the granting of father's motion, arguing that the decision to suspend her parenting time was not in the children's best interest. The trial court overruled mother's objection and adopted the magistrate's decision. In doing so, it considered and discussed the factors in R.C. 3109.051(D) and found that a suspension of mother's parenting time was in the children's best interest.

{¶16} Mother now appeals.

### *Suspension of Parenting Time*

{¶17} In a single assignment of error, mother argues that the trial court erred in failing to properly weigh the factors in R.C. 3109.051(D) when determining mother's parenting time and that it abused its discretion in maintaining the suspension of her parenting time.

{¶18} We review a trial court's judgment modifying parenting time for an abuse of discretion. *Veach v. Adams*, 1st Dist. Hamilton No. C-220072, 2022-Ohio-4031, ¶ 10. An abuse of discretion will only be found where the trial court's decision was unreasonable or arbitrary. *Id.*

{¶19} When one parent has been designated the legal custodian, as in this case, modifications to parenting time are governed by R.C. 3109.051. *Id.* at ¶ 11; *Bohannon v. Lewis*, 1st Dist. Hamilton Nos. C-210316 and C-210332, 2022-Ohio-

2398, ¶ 28. A change in circumstances is not required for a modification of parenting time. *Id.* at ¶ 30. Rather, the trial court must consider the factors set forth in R.C. 3109.051(D) and determine whether a modification to parenting time is in the children's best interest. *Id.*

{¶20} The factors set forth in R.C. 3109.051(D)[1] are as follows:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *;

(2) The geographical location of the residence of each parent and the distance between those residences * * *;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

---

[1] The factors in R.C. 3109.051(D)(12) and (15) are not applicable to parents.

7

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights * * *;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

*   *   *

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

*   *   *

(16) Any other factor in the best interest of the child.

{¶21} We first consider mother's contentions that the trial court did not properly weigh the factors set forth in R.C. 3109.051(D)(1) and (7) concerning the relationship of the children with their parents and the health and safety of the children. With respect to the (D)(1) factor, the trial court found that "[R.W.] suffered severe injuries while in Mother's care, the cause of which is still unknown as Mother has provided multiple different accounts of what transpired. Mother does not keep her home quiet, which [R.W.] requires for his mental health, and Mother has physically assaulted Father multiple times in front of the Children." And with respect to the (D)(7) factor, the trial court found that "[R.W.] has special needs, and suffered very significant injuries while in Mother's care. Mother has assaulted Father in the presence of the children on multiple occasions, and Mother does not maintain a quiet home, which [R.W.] needs for his mental health."

{¶22} The trial court's findings under these factors were supported by the record. While mother correctly notes that no claims have been substantiated against her for R.W.'s injuries, R.W. was indisputably injured while in mother's care, and mother has been unable to provide a concise explanation as to what caused that injury. As to the noise level of mother's home, father testified that R.W., who suffers from sensory issues, was affected by the environment at mother's home, which included loud music and people running in and out of the house. As the trier of fact, the trial court was in the best position to judge the credibility of the witnesses. *See In re T.K.M.*, 1st Dist. Hamilton No. C-190020, 2019-Ohio-5076, ¶ 31 (holding that matters as to credibility of the evidence were for the trial court to decide). It was entitled to believe father's testimony on this topic, and we will not second guess the trial court's credibility determination. Supporting father's testimony about R.W. being affected by

the noise level in mother's home was father's testimony that R.W. becomes visibly anxious when being transported to mother's home, as well as Turner's testimony that R.W. appears sad with mother.

{¶23} Mother also challenges the trial court's weighing of the factor in R.C. 3109.051(D)(5) pertaining to the children's adjustment to their home, school, and community. When considering this factor, the trial court found that "The Children are adjusted to Father's home, their school—where [R.W.] has an IEP—and their community. [R.W.] has difficulty in Mother's home as her home is not quiet." As discussed above, father's testimony supported the trial court's finding about the noise level of mother's home. And testimony from Turner also established that the children's behavioral problems at school coincided with the time that they were solely in mother's care, and that R.W.'s demeanor was noticeably happier with father than with mother.

{¶24} Mother last takes issue with the trial court's weighing of the factor in R.C. 3109.051(D)(9) which directs the court to consider the mental health of the parties. With respect to this factor, the trial court found that "The GAL has concerns for mother's mental health. Although Mother testified she complied with the recommendations of HCJFS, Father and the GAL testified this was untrue." While the record contains no evidence that mother has a diagnosed mental health illness, it establishes that a diagnostic assessment was recommended for mother, and that following the assessment the recommendations for mother included individual counseling and ongoing drug screens. The record reflects that the guardian ad litem had concerns about mother's mental health, and given the evidence in the record about

mother's behavior and history, the trial court was entitled to find that the guardian ad litem's testimony on this point was credible.

{¶25} The record does indicate that mother was more compliant with the services recommended by HCJFS than was testified to by Turner. Mother introduced evidence that she was successfully discharged from the Talbert House for meeting her treatment goals and that she was enrolled in Women Helping Women. Mother additionally testified that she submitted to at least two drug screens, although the record is not clear on the overall amount of screens that mother should have submitted to.

{¶26} Even if, however, the trial court could have accorded more weight under this factor to mother being allowed parenting time, we cannot find, considering the record as a whole and all the factors set forth in R.C. 3109.051(D), that the trial court abused its discretion in determining that a suspension of mother's parenting time was in the children's best interest. The trial considered each factor in this statute, and with the exception of its discussion concerning mother's mental health and treatment compliance, the court's findings were clearly supported by the record.

{¶27} Mother argues on appeal that the trial court could have considered a less severe result that did not involve suspending her parenting time, such as supervised visitation or allowing mother parenting time if she met certain conditions like parenting classes. But mother never specifically asked the trial court to consider imposing a less restrictive alternative. When asked what outcome she was asking the trial court for, mother testified that she was requesting that father be ordered to undergo anger management and that the children be placed in her sole custody. Moreover, the trial court's order does not foreclose the possibility that mother could

seek to restore parenting time in the future should that become in her children's best interests.

{¶28}   We are not unsympathetic to mother's argument or to the effect of the trial court's decision on her relationship with her children.  But given the evidence in the record establishing that R.W. suffered a serious injury—the cause of which remains unknown—while in mother's care and that B.B. suffered injury that same day, that mother kept the children from father for an approximately three-month period, that the children's behavior raised concerns at school during the time period that they were solely in mother's care, that R.W. becomes anxious when being transported to mother's home and is happier with father than mother, and that there is a history of mother acting violently towards father and filing false charges against him, we can find no abuse of discretion on the part of the trial court in suspending mother's parenting time rather than granting supervised visitation.  The trial court's decision was in no manner unreasonable or arbitrary.

{¶29}   We accordingly overrule mother's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

CROUSE, P.J., and ZAYAS, J., concur.

Please note:
   The court has recorded its own entry on the date of the release of this opinion.