[Cite as *In re D.L.*, 2023-Ohio-1125.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: D.L. | : | APPEAL NO. | C-220448 |
| | | TRIAL NO. | F20-151Z |
| | : | | |
| | : | | |
| | : | *O P I N I O N.* | |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 5, 2023

*Roger W. Kirk*, for Appellant Father,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury,* Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Robert Adam Hardin,* Guardian Ad Litem for D.L.

**BOCK, Judge.**

**{¶1}** Appellant Father challenges the juvenile court's order granting legal custody of his son, D.L., to Maternal Grandmother. Father argues that the record lacks competent and credible evidence showing that awarding Maternal Grandmother custody of D.L. was in the child's best interest. For the following reasons, we disagree with Father and affirm the juvenile court's judgment.

## I. Facts and Procedure

**{¶2}** In February 2020, Mother gave birth to D.L. shortly before she tragically succumbed to a gunshot wound. Mother left behind another child, D.L.'s half-sister ("Sister"). Like Mother, Sister's father was a victim of gun violence.

**{¶3}** Days after Mother's death, the Hamilton County Department of Job and Family Services ("HCJFS") obtained a temporary custody order for Sister. One week later, Father agreed to place D.L. in HCJFS's temporary custody. In a complaint, HCJFS alleged that D.L. and Sister were dependent under R.C. 2151.04(B) and (C). The complaint noted that Father was "believed to have been the target of the shooter on 2/2/20" and Father was convicted of multiple felonies from 2008 to 2013. Eventually, Maternal Grandmother was awarded legal custody of Sister. At a dependency hearing, Father stipulated to the facts in the complaint. Following a hearing, the juvenile court adjudicated D.L. dependent.

**{¶4}** Father requested custody of D.L. and completed his case-plan services. In July 2021, the magistrate terminated HCJFS's temporary custody of D.L., awarded Father legal custody of D.L., and granted Maternal Grandmother visitation rights. The magistrate's findings were minimal, but HCJFS noted that "Father has established a bond with his child" and had "unsupervised weekend visits with no reported concerns." HCJFS's supervision of D.L. concluded on September 13, 2021.

{¶5}   But the following week, the court granted temporary custody of D.L. to HCJFS because Father had been arrested and jailed for carrying a concealed weapon and having a weapon under a disability. The magistrate noted, "HCJFS attempted a Safety Plan but [Father] was unavailable due to being in a restrictive medical until [sic] due to a medical complication." In the ensuing months, both Paternal and Maternal Grandmothers petitioned for custody of D.L. In December 2021, the magistrate adjudicated D.L. dependent "[b]ased upon the clear and convincing evidence presented and the stipulations entered." Relevant here, the parties stipulated that Father was incarcerated awaiting trial for his firearm-related felony charges.

{¶6}   At the disposition hearing, Patricia Waller, D.L.'s HCJFS caseworker, testified that HCJFS requested custody out of concern that Father's pending firearm-related charges jeopardized his ability to parent D.L. In addition, she noted that Father lacked financial stability and "his own individual housing." She explained that Father had been evicted in December 2021 and was living with someone but had no further information without a background check or home study. And she stated that Kroger had fired Father after it learned of his criminal history. Waller acknowledged that Father had completed the case-plan services recommended to him following Mother's death and that he was consistent with visitation. But she testified that his ongoing legal issues complicated her ability to recommend future case-plan services. Rather, the post-arrest case plan directed Father to contact a support program to assist him with his unemployment and housing issues.

{¶7}   Father acknowledged his criminal charges and related legal issues but testified that he anticipated that the case would be resolved "within the next court date or two." Father explained that housing had never been an issue before his recent arrest and pretrial incarceration, which ultimately caused his eviction. He clarified his living

3

arrangements and lack of home study—while he had been living in his significant other's house with her family, he did not ask HCJFS to complete a home study of her house because of alleged complications with having his sister fingerprinted.

{¶8} Waller explained that D.L. had lived with Maternal Grandmother for most of his life, where he was "a happy two-year-old child." She described D.L.'s bond with Sister and his aunt, who both live with Maternal Grandmother. Finally, Waller explained that HCJFS disapproved a placement with Paternal Grandmother because the home-study report indicated she failed to acknowledge Father's criminal history. Yet, Paternal Grandmother recalled that there was little conversation about Father's criminal history during the home study. The home study report recommending D.L.'s placement with Maternal Grandmother, as well as the home-study report advising against placing D.L. with Paternal Grandmother, were entered into the evidence.

{¶9} Following the hearing, the magistrate determined that awarding Maternal Grandmother legal custody of D.L. was in the child's best interest. Father objected and, after a brief hearing, the juvenile court denied Father's objection and analyzed the best-interest factors in both R.C. 2151.414(D)(1) and 3109.05(F)(1). The court found that Father "has a lengthy history of court involvement," and "continued to rack up criminal charges in multiple counties since HCJFS was once again awarded custody, stemming from Father's 2021 arrest." The court relied on Waller's testimony that Father was unemployed and lacked stable housing.

{¶10} Beginning with D.L.'s interaction and relationships, the juvenile court found that D.L. was placed with Maternal Grandmother from birth, and "apart from a few months Father regained Custody [sic]," D.L. remained in her care along with his sibling. *See* R.C. 2151.414(D)(1)(a). Turning to D.L.'s custodial history, the juvenile court found that D.L. had been in HCJFS's custody for 27 months out of the past 31

4

months. *See* R.C. 2151.414(D)(1)(c). Regarding D.L.'s need for secure, permanent housing, the juvenile court found that Maternal Grandmother had permanent housing and Father had no independent housing. *See* R.C. 2151.414(D)(1)(d).

{¶11}  While the juvenile court acknowledged Father's desire to regain custody and his consistent visitation with D.L., it found that D.L. had a close bond with Maternal Grandmother and Sister. *See* R.C. 3109.04(F)(1)(a)-(c). The juvenile court found that D.L. was adjusted to life with Maternal Grandmother, who provides "a stable and safe living environment" for him. *See* R.C. 3109.04(F)(1)(d). And it found Maternal Grandmother well suited to facilitate parenting and visitation time with D.L. *See* R.C. 3109.04(F)(1)(f). The juvenile court adopted the magistrate's findings and conclusion. Father appeals the juvenile court's decision.

## II.    Law and Analysis

{¶12}   Father argues in a single assignment of error that granting Maternal Grandmother legal custody of D.L. was an abuse of discretion and contends that the juvenile court's best-interest analysis is not supported by sufficient evidence or the manifest weight of the evidence.

{¶13}  When determining the appropriate disposition for a child adjudicated dependent, the juvenile court may "[a]ward legal custody of the child to either parent or to any person" who moves for legal custody before the dispositional hearing. R.C. 2151.323(A)(3). The juvenile court's award of legal custody of D.L. to Maternal Grandmother vested her with certain caretaking and decision-making rights. *See* R.C. 2151.011(B)(21). But "an award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities." *See In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 17, citing R.C. 2151.011(B)(19), and *In re Hockstok,* 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, fn. 1.

5

**{¶14}** The juvenile court's decision to grant or deny legal custody "must be determined according to the best interest of the child." *In re M/E,* 1st Dist. Hamilton No. C-200349, 2021-Ohio-450, ¶ 19. Because Father retained his residual parental rights, privileges, and responsibilities, we review the juvenile court's factual findings to see if they are supported by a preponderance of the evidence. *In re A.W.,* 1st Dist. Hamilton No. C-140142, 2015-Ohio-489, ¶ 9. Further, we review the juvenile court's determination of the child's best interest for an abuse of discretion. *Id.* at ¶ 18. For us to find that the juvenile court abused its discretion, its decision must be unreasonable, arbitrary, or unconscionable. *Id.* at ¶ 10, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). In the context of legal-custody decisions, best-interest findings are reasonable if supported by competent and credible evidence. *Id.*

**{¶15}** When determining the best interest of a child in a legal-custody dispute, the juvenile court may consider the best-interest factors enumerated under R.C. 2151.414(D)(1) or 3109.04(F)(1). *Id.* Here, the juvenile court applied the facts of this case to the relevant factors in both statutes. Father maintains that the juvenile court's determination that awarding Maternal Grandmother legal custody of D.L. was in the child's best interest is not supported by credible evidence. We disagree.

**{¶16}** Beginning with R.C. 2151.414(D)(1), the juvenile court considered D.L.'s interactions and interrelationships, custodial history, and need for a legally secure permanent placement. The juvenile court found that Maternal Grandmother had provided D.L. with secure and permanent housing for most of his life and that he had developed a strong bond with Maternal Grandmother and Sister. Waller testified that she personally observed D.L. in Maternal Grandmother's home, where she described him as a "happy two-year-old child" with all of his needs met. Waller had no concerns for D.L.'s safety or well-being in her care, or regarding Maternal Grandmother's ability

6

to protect D.L. Further, Waller explained that D.L. was bonded with Sister. In addition to Waller's testimony, the home-study report for Maternal Grandmother supports the juvenile court's findings.

{¶17} Turning to R.C. 3109.04(F)(1), the relevant factors considered were Father's wishes, the person most likely to facilitate visitation and parenting time, D.L.'s interactions and interrelationships, and his adjustment to his home and community. The juvenile court recognized Father's desire to have custody of D.L. and his consistent visitation with his son, but found that D.L. had developed a close bond with Maternal Grandmother and Sister. In addition, D.L. had adjusted to living in Maternal Grandmother's home, which was a stable and safe environment. Further, the juvenile court found that Maternal Grandmother "is in the best position to facilitate consistent, stable parenting time visits." Again, these findings by the juvenile court are supported by Waller's testimony and Maternal Grandmother's home-study report.

{¶18} Father asserts that the evidence in the record demonstrates that his pending criminal cases would not affect his ability to parent D.L., he had recently found employment, and that he could provide stable housing for D.L. at his significant other's house. Waller testified that HCJFS was concerned with the potential outcome of Father's criminal charges. While Father and his attorney expressed a belief that his pending criminal charges would be promptly dismissed, his criminal case is still pending. And despite Father's testimony describing his significant other's house, he acknowledged that he had never requested a home study. In contrast, the juvenile court was presented with a copy of the home-study report for Maternal Grandmother, describing her home as safe and secure.

**{¶19}** After our review of the record, we hold that competent and credible evidence supported the juvenile court's finding that awarding legal custody of D.L. to Maternal Grandmother was in D.L.'s best interest.

### III.    Conclusion

**{¶20}** We overrule Father's single assignment of error and affirm the juvenile court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.