[Cite as *In re M.S.*, 2025-Ohio-1194.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: M.S. | : | APPEAL NO. | C-240334 |
| | | TRIAL NO. | F/20/1249 Z |
| | : | | |
| | : | | |
| | : | *O P I N I O N* | |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 4, 2025

*Christopher P. Kapsal*, for Appellant Father,

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Paul DeMott*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Jon R. Sinclair*, for Appellee M.B.,

*Victoria Link*, Attorney Guardian ad Litem.

MOORE, **Judge.**

**{¶1}** Appellant Father has appealed from the Hamilton County Juvenile Court's entry granting legal custody of his son, M.S., to his adult daughter, M.B. For the reasons set forth below, we hold that the juvenile court did not abuse its discretion in determining that a grant of legal custody to M.B. was in M.S.'s best interest. Accordingly, we affirm the juvenile court's judgment.

## I.     *Factual and Procedural History*

**{¶2}** It was clear from the start that life for M.S. would be no crystal stair. Born to drug-addicted parents and with a rare congenital condition that would require on-going specialized care, M.S.'s life was off to a challenging start. The path to normalcy for M.S. began in December of 2020, when the Hamilton County Department of Job and Family Services ("HCJFS") filed a complaint for temporary custody of the then ten-month-old M.S.

**{¶3}** In its complaint, HCJFS alleged that Father and Mother abused M.S. and rendered him dependent. The complaint alleged that M.S. and Mother tested positive for multiple narcotics at birth, that Father overdosed in the family's home in violation of a HCJFS at-home safety plan, and that Mother was incarcerated for six months in an unrelated criminal matter. The magistrate adjudicated M.S. abused and dependent, removed him from the home, and placed him into HCJFS's temporary custody.

**{¶4}** In July 2021, after a brief stay in foster care, M.S. was put into a kinship placement with M.B., Father's adult daughter. M.S. lived with M.B. and her spouse for roughly a year in their home in Colorado, until M.B.'s spouse was honorably discharged from the Army, and the family relocated to Nacogdoches, Texas, to be closer to M.B.'s in-laws. M.B. maintained communication with HCJFS, received

approval under the Interstate Compact on the Placement of Children to reside in both Colorado and Texas, and consistently worked with local child services in both locations.

{¶5} In June 2022, after caring for M.S. for almost a year without incident, M.B. filed for legal custody. Soon after M.B. filed for custody, HCJFS moved to terminate temporary custody and award legal custody to M.B. Father objected, asserting that custody of M.S. should be remanded to him. M.S.'s paternal grandmother also petitioned for custody, solely as a local alternative to Father. Mother, who did not petition for custody, believed that M.S. should remain with M.B.

{¶6} Trial on the matter began in January and concluded in July 2023. M.S.'s guardian ad litem ("GAL") supported M.B.'s request for legal custody of M.S. The GAL testified that she had outstanding concerns with M.B.'s biological parents' minimal attempts at contacting or visiting M.S. The GAL also expressed concerns with the parents' history of domestic violence and substance abuse. The GAL also voiced concerns with M.S.'s grandmother's enabling behavior. Specifically, Grandmother admitted that while M.S. was still living with his parents, she knew both parents were actively abusing drugs, but choose to remain silent and did not intervene or contact authorities.

{¶7} HCJFS manager Anissa Cardwell explained why the agency supported M.B. being awarded custody. According to Cardwell, the agency is reluctant to relocate a child without evidence that a child needs to be removed from the home. Cardwell explained that the agency had no concerns with M.B. that would warrant M.S. being removed from M.B.'s care.

{¶8} In contrast, Cardwell testified that because of Father's continued drug use, criminal conduct, and volatile relationship with Mother, there were on-going

concerns with him assuming care of M.S. Of particular concern was Father's inability to permanently remove Mother from the home, even though she had used and stored drugs there.

**{¶9}** In support of her custody petition, M.B. testified that M.S. has thrived under her care. M.B. explained that M.S. was born with Hirschsprung's disease. This congenital condition required on-going medical care and procedures, which M.B. explained she was able to accommodate. M.B. additionally expressed her concern about Father's fitness to care for M.S., recalling how, when she was 18, Father supplied her with ecstasy, cocaine, and marijuana. M.B. also shared her concern with Father's history of domestic violence with Mother. To validate her concern, M.B. introduced texts from 2022 between her and Mother, where Mother stated she was "was going to die here" if she stayed with Father. M.B. also introduced as evidence photographs of Mother after Father allegedly dragged her from a car.

**{¶10}** In support of his petition to take over the care of M.S., Father cited the facts that he had remained sober for 16 months, disposed of all outstanding criminal charges (which were spread across three states), and had a stable income, stable housing and strong communal ties. Exhibits admitted by the court also demonstrated that Father satisfied the agency's case-plan objectives, which included therapy, substance-abuse treatment, medication, and undergoing random drug screens. Mother testified that although she did not want custody of M.S., she was ready to coparent with Father. However, during the pendency of the magistrate's decision, Mother died.

**{¶11}** On October 16, 2023, the magistrate granted HCJFS's motion to terminate temporary custody, and awarded M.B. legal custody of M.S., while denying both Father's and Grandmother's petitions. Father objected, insisting that HCJFS

failed to satisfy its burden to terminate temporary custody.

**{¶12}** However, the juvenile court denied Father's objection and adopted the magistrate's decision. In its entry, the court considered the statutory factors under R.C. 2151.414(D) and 3109.04(F)(1), and determined that it was in M.S.'s best interest to remain with M.B. The court noted that M.S. had been with M.B. for roughly two years and had become well-bonded. The court added that the HCJFS and the GAL expressed no concerns with M.B.'s care of M.S.

**{¶13}** The court acknowledged that Father had made significant strides toward unification. But, the court also expressed lingering concerns with Father. These concerns included that Father remained under community control, had no childcare plans for M.S. while he was at work, provided no income verification, had no plans for how he would get the supplies needed to care for M.S., and only desired to communicate with M.S. when it was convenient for Father. The court also emphasized Father's continued poor decision making, as demonstrated by his supplying one of his children with drugs; continually allowing Mother to live in his home, despite her lack of sobriety, and his being cited multiple times for driving under a suspended license. The court concluded that based on the statutory considerations of R.C. 2151.414(D) and 3109.04(F)(1), it is in M.S.'s best interest to be placed into the legal custody of M.B.

## II. Analysis

**{¶14}** In his sole assignment of error, Father argues that the court erroneously awarded custody to M.B. Father cites that he completed the entirety of his case plan, and that he has ameliorated the concerns that prompted M.S. to be removed in the first place, and therefore, he argues, custody of M.S. should have been remanded to him.

### A. Grant of Legal Custody

**{¶15}** Upon adjudicating a child as abused, neglected or dependent, the juvenile court may take a number of dispositional paths. R.C. 2151.353(A). Of the options available, the court may make an award of legal custody to a parent, or to any person who moves for legal custody, or is identified as a proposed legal guardian. R.C. 2151.353(A)(3). A grant of legal custody is different from a grant of permanent custody, because a grant of legal custody allows for parents to retain certain residual rights. *In re J.R.*, 2023-Ohio-2145, ¶ 51 (1st Dist.); *see In re C.L.*, 2022-Ohio-3596, ¶ 13 (12th Dist.) (explaining that a parent's residual rights include contact and visitation rights, a duty of support and the ability to petition for future custodial modifications).

**{¶16}** Legal custodial determinations must be made in accordance with the child's best interest. *In re J.S.*, 2024-Ohio-4887, ¶ 11 (1st Dist.). To determine the best interest of the child in a legal-custody case, courts are not required to consider specific, statutory factors. *In re R. Child.*, 2023-Ohio-2144, ¶ 8 (1st Dist.). This court, however, has found the best-interest factors in R.C. 2124.414(D) and 3109.04(F), which govern custodial allocations in permanent and private custody disputes respectively, to be instructive. *Id.* Courts may also consider the history of a parent's behavior. *In re A.W.*, 2022-Ohio-3715, ¶ 22 (1st Dist.).

**{¶17}** We review a juvenile court's factual findings to see if they are supported by a preponderance of the evidence, but review a court's best-interest conclusions for an abuse of discretion. *In re D.L.*, 2023-Ohio-1125, ¶ 14 (1st Dist.). An abuse of discretion arises where a court acts in an arbitrary, unreasonable, or unconscionable manner, such that the court's determination was not supported by competent and credible evidence. *In re J.S.* at ¶ 14.

**{¶18}** In awarding M.B. custody, the court's entry shows that it considered the

R.C. 2151.414(D)(1) factors, which include:

> (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

> (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

> (c) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies for 12 or more months of a consecutive 22-month period;

> (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

*In re J.S.* at ¶ 15.

**{¶19}** As to the first factor, the court determined that M.S. was well-bonded with M.B. The court explained that M.B. had M.S. in her care for two years at the time of the magistrate's finding, that all of M.S.'s normal and special needs were met, and that M.B. has provided M.S. with a comfortable life, and has ample familial support from her in-laws. Father does not dispute these findings. Instead, Father asserts that he would be more well-bonded if M.S. lived closer. But the record before the lower court demonstrates that Father's communication with M.S. was sporadic, with M.B. frequently initiating contact with Father for virtual visitation with M.S. The court also found that Father did not want a regimented virtual visitation schedule, but instead wanted to be free to decided when to see M.S. Based on the evidentiary record, we

conclude that the juvenile court's findings were adequately supported by the record.

**{¶20}** As to the second and third factors, the court referenced the GAL's recommendation, while acknowledging that M.S. was in agency custody for over two years. Again, Father does not dispute these findings. Instead, Father insists that M.S.'s time in agency custody not be held against him, since he was using this time to satisfy case-plan objectives. But it was Father's own conduct that caused the delay in meeting the objectives of the case plan. Specifically, the court found that Father relapsed as recently as July 2022, and that he was intermittently incarcerated from August 2022 to March 2023. Therefore, the trial court did not err when it considered either the GAL's recommendation or the custodial history of M.S.

**{¶21}** Turning to the fourth factor, the court determined that M.S. had a legally secure permanent placement with M.B. The court noted that no party has expressed concern for the care M.B. provides M.S. The court referenced that M.B. provides daytime supervision of M.S., while M.B.'s spouse works full time to support the family, and that the family has ample familial support from M.B.'s in-laws who live nearby. Further, the court referenced that M.B. ensures that M.S. visits Hirschsprung specialists when necessary.

**{¶22}** While Father insists that his completion of case-plan services establishes that he is a secure placement alternative, this factor is not dispositive. A parent's satisfaction of case-plan objectives is relevant, but does not control a best-interest determination. *J.S.*, 2024-Ohio-4887, at ¶ 26 (1st Dist.). Further, the court identified remaining concerns with M.S. returning to Father, specifically, Father's sobriety, criminal history, his ability to support and care for M.S., and his volatile relationship with Mother. While Mother's death may alleviate one of these concerns, the evidentiary record adequately supports the finding that M.B. was a more secure

placement option for M.S. than Father.

**{¶23}** Father further argues that the agency's decision to move to terminate temporary custody was not adequately supported by the record. Father identifies two issues in support of this argument. First, that Cardwell, HCJFS's testifying witness, never observed M.S. interact with any care giver, and that she had incomplete information on Father's case-plan progress. However, because case-plan progress is not dispositive to a grant of legal custody, Father's argument is unpersuasive. *Id.* As to Cardwell's qualifications to testify, while Cardwell had not observed M.S. with either party to this appeal, the court took note that agency representatives observed M.S. in M.B.'s care and had no cause for concern. At most, Father's argument goes towards Cardwell's credibility as a witness, and in this circumstance, we defer to the trier of fact for credibility determinations, given that the juvenile court is in the best position to assess the credibility of presented testimony. *In re M.H.*, 2023-Ohio-3776, ¶ 46 (1st Dist.). In light of the evidentiary record, and the absence of case law to support either of Father's assertions, Father's arguments disputing the court's determinations as to secure legal placement are unpersuasive.

**{¶24}** The court's entry also shows that it considered the R.C. 3109.04(F)(1) factors, which include (a) the wishes of the child's parents and guardians, (d) the child's adjustment, (e) the mental health of all parties involved, and (f) which party is more likely to facilitate visitation. The court's entry references that Father and Mother testified regarding their desire to have M.S. returned home. But, after two years of living with M.B., the court found that M.S. was well adjusted in Texas, and that all of his needs were satisfied. As to the health of all parties, the court found that M.S.'s condition had been appropriately cared for while with M.B. The court noted that while Father may be sober now, he has a history of both mental illness and substance abuse.

As to visitation, the court found that M.B. consistently demonstrated that she facilitated communication and initiated visitation opportunities between M.S. and Father. As applied to the relevant factors within R.C. 3109.04(F)(1), competent and credible evidence exists to support the court's determination that it is in M.S.'s best interest to remain in M.B.'s care.

### III.    Conclusion

**{¶25}** Upon review of the record, the juvenile court's best-interest determination was supported by both competent and credible evidence.  Therefore, the court's custodial allocation awarding M.B. legal custody of M.S. was not an abuse of discretion.  We overrule Father's sole assignment of error and affirm the judgment of the juvenile court.

Judgment accordingly.

**ZAYAS, P.J.,** and **NESTOR, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.