# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: B.R.F.                    :        APPEAL NO.   C-250143
                                          TRIAL NO.    F/18/1620 X

                                 :

                                 :
                                          *JUDGMENT ENTRY*

                                 :

This cause was heard upon the appeal, the record, and the briefs.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/11/2025 per order of the court.**

**By:**_____
          **Administrative Judge**

[Cite as *In re B.R.F.*, 2025-Ohio-2061.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: B.R.F. | : | APPEAL NO. C-250143 |
| | | TRIAL NO. F/18/1620 X |
| | : | |
| | : | *O P I N I O N* |
| | : | |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 11, 2025

*Kimberly V. Thomas*, for Appellant Grandmother,

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Pro Kids* and *Elizabeth Hutson*, for Appellee Guardian ad Litem for the child.

**KINSLEY, Presiding Judge.**

{¶1} Appellant maternal grandmother appeals the judgment of the Hamilton County Juvenile Court denying her petition for legal custody and granting permanent custody of her grandchild, B.R.F., to the Hamilton County Department of Job and Family Services ("HCJFS"). Grandmother argues that the juvenile court erred in determining that B.R.F.'s best interest would be served by denying her legal custody of B.R.F. For the reasons set forth below, we affirm the juvenile court's judgment.

*Factual and Procedural History*

{¶2} B.R.F.'s involvement with HCJFS began in November 2021 when he was eight months old. Mother reported B.R.F. missing, and a police investigation uncovered that father had taken B.R.F. while mother was unconscious. Police believed that mother had been under the influence of heroin at the time. Mother also had two pending domestic-violence charges against her for allegedly assaulting grandmother and father. In HCJFS's motion for emergency custody, HCJFS alleged that mother also had a lengthy history of substance abuse dating back to 2012 when police found a "meth lab" in her vehicle. Furthermore, because of mother's substance abuse, grandmother had retained physical custody of mother's son, N.L., under a power of attorney since 2018.

{¶3} Following HCJFS's initial complaint, in January 2022, the juvenile court adjudicated B.R.F. a dependent child and placed him in the temporary custody of HCJFS. HCJFS then implemented a case plan seeking reunification of B.R.F. with his parents. The case plan noted that father and mother admitted to using drugs and that their relationship was domestically violent and that the parents lacked access to housing. The case plan recommended that father and mother undergo random drug screens, domestic-violence assessments, and secure stable income and housing.

**{¶4}** Despite parents' initial agreement with the case plan, parents did not make progress with the plan. Neither mother nor father had engaged in an initial diagnostic assessment, mother had been incarcerated for a period of time, and father had not secured housing. In September 2022, HCJFS moved to continue temporary custody.

**{¶5}** Given parents' lack of progress, grandmother appeared before the juvenile court at a semi-annual review hearing and requested custody of B.R.F. HCJFS conducted a study of grandmother's home, which the assessor approved. Shortly thereafter, grandmother tested positive for illicit substances, including methamphetamine, and as a result, HCJFS did not support placing B.R.F. with grandmother.

**{¶6}** HCJFS eventually moved to modify temporary custody to permanent custody in May 2023. Grandmother then filed a petition for legal custody. The matter proceeded to a trial before the magistrate in March and August 2024.

**{¶7}** At trial, HCJFS presented testimony from the family's ongoing caseworker. The caseworker testified that B.R.F. had been in the care of the same foster family since HCJFS had obtained temporary custody of him in November 2021. The caseworker further testified about the circumstances of HCJFS's initial removal of B.R.F. from his home over concerns for domestic violence and substance abuse. According to the caseworker, parents had not made case-plan progress, and their participation in the case had been sporadic. Although father appeared for some court proceedings, the caseworker had not heard from him since March 2022. Father had visited B.R.F., but those visits stopped in April or May 2022. HCJFS could not verify father's income or housing. Mother was likewise inconsistent in her case participation. Mother was incarcerated periodically throughout the case, and she did

not visit B.R.F. HCJFS continued to have concerns regarding mother's housing, substance abuse, and domestic violence.

{¶8} The caseworker also testified about grandmother's relationship with B.R.F. According to the caseworker, grandmother had not been involved in B.R.F.'s life until January or February of 2023 when she began weekly supervised visits with B.R.F. Although HCJFS had obtained an approved home study for grandmother, and grandmother had successfully raised mother's 17-year-old son, N.L., HCJFS did not support grandmother having unsupervised visits with B.R.F., because of grandmother's positive toxicology screens. Grandmother tested positive for methamphetamine in January 2023; marijuana in May 2023; and marijuana, amphetamine, and methamphetamine in February 2024. The caseworker testified that grandmother's drug use gave her particular concern given B.R.F.'s young age and mother's history of drug use. Ultimately, the caseworker supported an award of permanent custody.

{¶9} B.R.F.'s court-appointed special advocate also testified in support of HCJFS's permanent-custody motion. B.R.F.'s advocate testified that B.R.F. had been diagnosed with a speech disorder and had social and emotional delays. Although B.R.F. no longer received special education or therapy at the time of trial, the advocate had concerns with B.R.F.'s potential needs as he progressed through school. The advocate also expressed concern with the possibility of B.R.F. living with grandmother because of grandmother's substance use.

{¶10} Grandmother testified in support of her custody petition. Grandmother testified that she worked full-time at a pet resort and lived in a four-bedroom home, which she rented. Grandmother testified that she felt bonded to B.R.F. and that she wanted B.R.F. to remain with relatives like his siblings. As to the positive drug screens,

grandmother admitted that she had smoked methamphetamine in October of 2023, and she also admitted to taking an unknown pill from her cousin that she believed to be Adderall. Grandmother denied consistent drug use and claimed to use drugs recreationally or to relieve pain caused by a connective-tissue disorder.

{¶11} Mother and her 17-year-old son, N.L., also testified in support of grandmother's custody petition. Mother testified that grandmother had raised N.L. for the past six years. Mother has a total of five children who live with various relatives, and she expressed her desire to preserve the family bond by keeping B.R.F. with grandmother. N.L. testified that grandmother had provided housing and care for him for the past several years and that, in his opinion, grandmother would be capable of meeting B.R.F.'s needs.

{¶12} At the conclusion of trial, the magistrate entered a decision denying grandmother's custody petition and granting permanent custody of B.R.F. to HCJFS. The magistrate determined under R.C. 2151.414(B)(1)(d) that B.R.F. had been in the custody of HCJFS for at least 12 months of a consecutive 22-month period. The magistrate further found under R.C. 2151.414(B)(1)(b) that mother and father had abandoned B.R.F. by failing to visit him or otherwise provide support for him since 2022. The magistrate also determined under R.C. 2151.414(B)(1)(a) that B.R.F. could not or should not be placed with his parents, because they failed to substantially remedy the conditions causing B.R.F. to be placed in foster care. With respect to the best-interest analysis, the magistrate determined that B.R.F.'s best interest would be served by granting permanent custody of B.R.F. to HCJFS and denying grandmother's custody petition.

{¶13} Mother and grandmother filed objections to the magistrate's decision. The trial court conducted an independent review of the matter, overruled

6

grandmother's and mother's objections, and adopted the decision of the magistrate granting permanent custody of B.R.F. to HCJFS.

**{¶14}** Grandmother appeals.

### *Analysis*

**{¶15}** In a single assignment of error, grandmother argues that the juvenile court's decision granting permanent custody of B.R.F. to HCJFS and denying her petition for legal custody was not supported by sufficient evidence and was against the manifest weight of the evidence.

**{¶16}** With respect to the juvenile court's decision to terminate mother's and father's parental rights, neither mother nor father have appealed the permanent-custody decision, and grandmother has never stood in loco parentis for B.R.F. Therefore, grandmother's appeal is limited to challenging the juvenile court's denial of her legal-custody petition. *See In re L & M Children*, 2019-Ohio-5520, ¶ 50 (1st Dist.).

**{¶17}** Under R.C. 2151.353(A)(3), if a juvenile court finds a child to be abused, neglected, or dependent, the court may award legal custody of that child to any person who has filed a petition for custody prior to the dispositional hearing, as a dispositional alternative to committing the child to the permanent custody of a public children services agency. In determining whether to grant legal custody to a petitioner under R.C. 2151.353(A)(3), the statute does not require the juvenile court to consider any specific criteria, but this court has held that the court may be guided by the best-interest factors as set forth in R.C. 2151.414(D) and 3109.04(F), to the extent applicable. *In re A.F.*, 2020-Ohio-5069, ¶ 35-36 (1st Dist.).

**{¶18}** The best-interest factors under R.C. 2151.414(D)(1) are as follows: (a) the interaction and interrelationship of the child with the child's parents, siblings,

7

relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors in R.C. 2151.414(E)(7)-(11) apply.

{¶19} The relevant best-interest factors under R.C. 3109.04(F)(1) are as follows: (a) the wishes of the child's parents; (b) the child's wishes; (c) the child's interactions with family members or any other person who may significantly affect the child; (d) the child's adjustment to home, school, and community; and (e) the mental and physical health of all involved.

{¶20} The juvenile court's findings with respect to the legal-custody petition must be supported by a preponderance of the evidence, and this court reviews a juvenile court's decision on a petition for legal custody for an abuse of discretion. *In re M.S.*, 2025-Ohio-1194, ¶ 17 (1st Dist.).

{¶21} As to the best-interest factors, the juvenile court determined that B.R.F. was bonded to his foster parents, and that his parents had abandoned him and had not had contact with him since 2022. The juvenile court determined that B.R.F. was too young to express his wishes, but that his court-appointed special advocate believed that permanent custody was in B.R.F.'s best interest. With respect to grandmother, the court found that B.R.F. had positive interactions with grandmother during visits in that she was able to engage and play with him, and that grandmother had stable housing and income. However, the court had serious concerns with grandmother's positive toxicology screens during the pendency of the case. Although the court

8

recognized that N.L., B.R.F.'s half sibling, had achieved successes in grandmother's care, the court noted the significant difference between a 17-year-old and a three-year-old, with the latter being unable to self-protect. The court found grandmother's explanations for the positive toxicology screens unreasonably minimized her drug use.

{¶22} On appeal, grandmother argues that the juvenile court erred in weighing the best-interest factors. Grandmother argues that HCJFS "stood in the way of reunification" even though grandmother had an approved home study. Grandmother points out that her visits with B.R.F. went well and that HCJFS did not have any concerns with visits. The visits also progressed to four hours in length and occurred at grandmother's home and in the community. Grandmother argues that the juvenile court minimized the bond that had developed between her and B.R.F., and that the juvenile court failed to consider that the absence of B.R.F.'s crying at the conclusion of visits with grandmother indicated secure attachment and not a lack of attachment.

{¶23} Grandmother also argues that the juvenile court failed to consider that she had stable housing and income, and instead, the juvenile court focused on two positive drug screens, which occurred a year apart. Grandmother argues that she does not have a substance-abuse problem, shown by the fact that she also had negative drug screens during the pendency of the case, and that she has successfully cared for N.L. Grandmother also points out that B.R.F.'s foster family had not yet decided whether to adopt B.R.F.

{¶24} The juvenile court's decision with respect to the best-interest findings in denying grandmother's custody petition is supported by the evidence and is therefore not an abuse of discretion. The evidence shows that B.R.F. has lived with his foster family since he was eight months old, and he was three and a half years old at

the time of trial. Parents have abandoned B.R.F. and have not demonstrated progress towards resolving the substance-abuse, domestic-violence, and housing issues, which led to HCJFS's involvement in B.R.F.'s life. Although grandmother has stable housing and income, has helped raise another of mother's children, clearly loves B.R.F., and understandably wants to keep the familial bond intact, grandmother's drug use remained a significant safety concern from the standpoint of HCJFS, the guardian ad litem, and ultimately the juvenile court, particularly given B.R.F.'s young age and the timing of grandmother's positive drug tests so close to trial. Grandmother tested positive for methamphetamine in January 2023 and for amphetamine and methamphetamine in February 2024—just one month prior to trial.

{¶25} Given these considerations, the juvenile court's decision denying grandmother's petition for legal custody of B.R.F. is supported by a preponderance of the evidence and is not an abuse of discretion. We therefore overrule grandmother's assignment of error.

### *Conclusion*

{¶26} We affirm the juvenile court's judgment denying grandmother's petition for legal custody of B.R.F.

Judgment affirmed.

**ZAYAS** and **BOCK, JJ.,** concur.

10