[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re R.G.M.,* Slip Opinion No. 2024-Ohio-2737.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-2737

IN RE R.G.M.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re R.G.M.,* Slip Opinion No. 2024-Ohio-2737.]

*Family law—Legal custody—Due process—Cross-examination—Biological parent was not entitled to same due-process rights in legal-custody dispositional hearing as those afforded parents in permanent-custody proceedings—Record did not demonstrate that biological parent was denied opportunity to cross-examine author of report relied on by juvenile court or why cross-examination would have been beneficial, let alone critical, to biological parent's case—Biological parent's due-process rights were not violated when juvenile court considered report under R.C. 2151.35(B) and Juv.R. 34(B)—Court of appeals' judgment reversed and cause remanded.*

(No. 2023-0514—Submitted February 6, 2024—Decided July 23, 2024.)

APPEAL from the Court of Appeals for Muskingum County,

Nos. CT2022-0046 and CT2022-0047, 2023-Ohio-685.

_____

BRUNNER, J., authored the opinion of the court, which KENNEDY, C.J., and DeWINE, DONNELLY, STEWART, and DETERS, JJ., joined. FISCHER, J., concurred in judgment only.

**BRUNNER, J.**

**{¶ 1}** Appellant, Muskingum County Adult and Child Protective Services ("the agency"), appeals a judgment of the Fifth District Court of Appeals reversing a legal-custody decision of the Muskingum County Juvenile Court in the agency's favor. The court of appeals held that the juvenile court had erred in admitting and relying on a report of a psychologist who was not present at the legal-custody hearing and was not subjected to cross-examination. We conclude that under the statutory scheme governing legal-custody proceedings following a juvenile court's adjudication that a child is an abused, neglected, or dependent child, the juvenile court was permitted to consider the psychologist's report, even if the report constituted hearsay, and was permitted to limit testimony about the report. *See* R.C. 2151.35(B)(2)(b) and (c); Juv.R. 34(B)(2) and (3).

**{¶ 2}** Appellee, K.G., who is the mother of the children whose custody is at issue in this case, maintains that due process and fundamental fairness precluded the juvenile court from considering the psychologist's report, because K.G. did not have an opportunity to cross-examine the psychologist who prepared it. But K.G. was not denied an opportunity to question the psychologist, and the record is devoid of facts establishing that application of the legal-custody dispositional procedures within R.C. Ch. 2151 and Juv.R. 34 violated her rights to procedural due process. We therefore reverse the judgment of the court of appeals and remand the matter to that court for consideration of K.G.'s remaining assignment of error.

## I. BACKGROUND

**{¶ 3}** K.G. gave birth to twins on September 13, 2020. The children both have the initials "R.G.M." The children were born prematurely, each weighing less

than five pounds at birth. On September 15, 2020, the agency responded to a report from the hospital at which the children were born regarding concerns about K.G.'s mental health and her ability to care for the children. A caseworker with the agency met with K.G. and asked her to enter into a safety plan with the agency. K.G. declined to do so.

{¶ 4} A day later, the caseworker received another call from the hospital, notifying her that K.G. was having a mental-health episode and was going to be admitted to the hospital's psychiatric unit. Thereafter, the agency sought and was granted emergency temporary custody of the children through the Muskingum County Juvenile Court. While the children remained in the temporary legal custody of the agency, they were placed in a kinship-care arrangement with their maternal aunt. A guardian ad litem appointed for the children reported that as of November 16, 2020, the children were doing well in that placement.

{¶ 5} The juvenile court conducted a hearing on November 18, 2020. K.G. was represented by counsel at the hearing, at which the court adjudicated the children dependent under R.C. 2151.04(C). The court continued the order granting the agency temporary custody of the children. It also recognized the case plan entered into between K.G. and the agency, which included a plan for K.G. to receive mental-health services including a "psychological evaluation to see how/if [K.G.'s] mental health [would] affect her parenting abilities," referrals for ongoing therapy, and parenting classes.

{¶ 6} On four occasions, K.G. met with Dr. Gary L. Wolfgang, a licensed psychologist and professional clinical counselor, who performed K.G.'s psychological evaluation. Dr. Wolfgang issued K.G.'s psychological-evaluation report on January 26, 2021. On February 11, 2021, the juvenile court issued an order notifying the parties that Dr. Wolfgang's report had been filed with the court and that counsel would be provided with copies of the report to review with their clients.

**{¶ 7}** On June 15, 2021, upon the agency's request and following a hearing, the juvenile court transferred temporary legal custody of the children from the agency to their maternal aunt. The agency maintained protective supervision over the children. In the court's entry granting temporary legal custody of the children to the maternal aunt, the court adopted as part of its findings a report by the agency that provided details from Dr. Wolfgang's report. The agency's report noted that Dr. Wolfgang had concluded that K.G. "ha[d] several mental health conditions, including obsessive compulsive disorder, [post-traumatic stress disorder], and generalized anxiety disorder" and that "she would need continued therapy and psychotropic medications to manage the symptoms of these conditions." The agency's report, which was incorporated into the court's entry, further explained that Dr. Wolfgang's report warned that K.G.'s "anxiety could impair if not completely limit her ability to parent" and that her prognosis for remediating those issues was "at 'best guarded but probably poor.' "

**{¶ 8}** Shortly after the juvenile court's temporary-legal-custody order was issued, the agency moved the court to grant the maternal aunt legal custody of the children and to terminate the agency's protective supervision. The agency cited portions of Dr. Wolfgang's report as bases for ongoing concerns regarding K.G.'s mental health.

**{¶ 9}** A hearing on the agency's motion was held on May 17, 2022. Before the hearing, the agency provided responses to discovery requests. The responses included a list of anticipated witnesses that did not include Dr. Wolfgang. At the hearing, the agency sought to have parts of Dr. Wolfgang's report read into the record by a caseworker with the agency. K.G.'s attorney raised the following objection:

> Your honor, I'm going to object and move to strike. I understand that this is a dispositional hearing and that hearsay is

admissible, but under—more of a due process objection on fundamental fairness. If we're going to be quoting Dr. Wolfgang, I think we need to have him here to testify just for fundamental fairness and due process.

{¶ 10} The assistant prosecutor representing the agency responded that he would only ask the witness to read from the report, which had already been submitted to the court, and would not ask the witness "to opine any further about it." The court overruled K.G.'s objection, and when K.G.'s attorney later made a continuing objection regarding the report's being read into the record without Dr. Wolfgang being present to testify, the court said the following:

If you believe that there is a specific need for some sort of rebuttal evidence, that's certainly something we can address at some point, but I believe that the document in and of itself would be admissible as hearsay, the whole report, let alone what [the witness is] reading.

The court then noted and overruled K.G.'s continuing objection.

{¶ 11} At the close of the agency's case, the juvenile court asked the parties whether there were any objections to the court's taking judicial notice of Dr. Wolfgang's report, which had been submitted to the court, rather than the court's admitting it as a new exhibit. No objections were raised.

{¶ 12} Following the hearing, the court issued an entry granting legal custody of the children to the maternal aunt. The court terminated the agency's protective supervision and awarded K.G. visitation with the children. K.G. appealed the juvenile court's judgment to the Fifth District.

**{¶ 13}** The Fifth District reversed the juvenile court's judgment, holding that K.G.'s right to due process was violated when the juvenile court admitted and relied on Dr. Wolfgang's report without K.G.'s having had an opportunity to cross-examine Dr. Wolfgang. 2023-Ohio-685, ¶ 24, 28 (5th Dist.). In reaching that conclusion, the court of appeals relied on this court's decision in *In re Hoffman*, 2002-Ohio-5368, in which we determined that "[i]n a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem," *Hoffman* at syllabus. Although the court of appeals recognized that *Hoffman* involved a permanent-custody determination and the right to cross-examine a guardian ad litem—factors that are not present in this case—it reasoned that the analysis in *Hoffman* supported applying the case outside the permanent-custody context. 2023-Ohio-685 at ¶ 19-24. The agency appealed the appellate court's judgment to this court, and we accepted discretionary review. *See* 2023-Ohio-2348.

## II. ANALYSIS

**{¶ 14}** The agency contends that this court's decision in *Hoffman* does not support the Fifth District's reversal of the juvenile court's judgment. It also argues that due process does not require an opportunity to cross-examine the preparer of a psychological-evaluation report in a legal-custody proceeding. The record and the procedural history of this case do not support K.G.'s arguments concerning her rights to due process or to confront the agency's witnesses. And we agree with the agency that the court of appeals erred in its application of *Hoffman*.

### A. *Procedures in legal-custody dispositional hearings*

**{¶ 15}** Chapter 2151 of the Ohio Revised Code aims "[t]o provide for the care, protection, and mental and physical development of children . . ., whenever possible, in a family environment." R.C. 2151.01(A). The procedures set forth in R.C. Ch. 2151 are meant to ensure that parents who are parties to proceedings under

the chapter receive a fair hearing with appropriate constitutional safeguards. R.C. 2151.01(B).

{¶ 16} Although parents have a fundamental right to parent their children, a child has basic rights to adequate care and to be free from abuse and neglect. *See In re Schmidt*, 25 Ohio St.3d 331, 335 (1986). Therefore, a parent's rights begin to wane once his or her child is found to have suffered from abuse, neglect, or dependency. *See In re Brayden James*, 2007-Ohio-2335, ¶ 21-22. Juvenile courts are afforded broad discretion in fashioning a disposition following the adjudication of a child as being abused, neglected, or dependent, because the courts are charged with protecting the best interests of children. *See* R.C. 2151.353(A).

{¶ 17} By granting legal custody to the maternal aunt in this case, the juvenile court awarded the aunt "the right to have physical care and control of the child[ren]," R.C. 2151.011(B)(21). But K.G. retained her "residual parental rights, privileges, and responsibilities," *id.*, and K.G. may in the future seek to modify or terminate the legal-custody order, *see* R.C. 2151.42(B). Because K.G. would retain these residual rights, the law provided her far different procedural safeguards in the legal-custody proceeding than those that would be afforded a parent in a permanent-custody proceeding through which parental rights could be completely terminated. *See* R.C. 2151.011(B)(31).

{¶ 18} In K.G.'s legal-custody proceeding, the juvenile court was explicitly authorized under R.C. 2151.35(B)(2)(b) to hear and consider hearsay evidence. *See also* Juv.R. 34(B)(2). The juvenile court also could limit the cross-examination of professionals who conducted mental-health evaluations and prepared reports of those evaluations for the court's consideration. *See* R.C. 2151.35(B)(2)(c); Juv.R. 34(B)(3). K.G. conceded at the hearing that Dr. Wolfgang's report was admissible hearsay under these provisions. But she insisted that her objection was instead "a due process objection on fundamental fairness."

### B. *K.G.'s right to procedural due process at the legal-custody hearing*

**{¶ 19}** K.G. argues that the procedures the juvenile court employed under R.C. 2151.35(B)(2) and Juv.R. 34(B) violated her due-process rights. Proper analysis of her due-process claim includes examination of the various interests at stake in the legal-custody proceeding, the risk of erroneous deprivation of K.G.'s interests through the procedures used, and whether additional safeguards existed to mitigate those risks. *See In re B.C.*, 2014-Ohio-4558, ¶ 17-18.

**{¶ 20}** The court of appeals, however, determined that K.G. was entitled to the same procedural protections as those afforded the parents in *Hoffman*, 2002-Ohio-5368, and conducted no further analysis. *See* 2023-Ohio 685 at ¶ 24 (5th Dist.). But the parents in *Hoffman* were seeking to prevent the termination of their parental rights in a permanent-custody proceeding and were therefore entitled to "'"'every procedural and substantive protection the law allow[ed],' '"'" *Hoffman* at ¶ 14, quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist. 1991).

**{¶ 21}** The court of appeals erroneously determined that K.G.'s interests were "'"sufficiently analogous' " to those of parents in permanent-custody proceedings. 2023-Ohio-685 at ¶ 22, quoting *In re A.K.*, 2012-Ohio-4430, ¶ 23 (9th Dist.). It supported that position with language in R.C. 2151.42(B), which states that legal-custody orders are "intended to be permanent in nature." 2023-Ohio-685 at ¶ 22. However, R.C. 2151.42(B) also specifically sets forth the standard for obtaining a modification or termination of a legal-custody order. And regardless of the duration of a legal-custody order, such an order does not divest a parent of all legal rights regarding his or her child, nor does it permanently foreclose a parent's right to regain custody. *See In re C.R.*, 2006-Ohio-1191, ¶ 23.

**{¶ 22}** We have recognized that R.C. 2151.42(B) furthers the legislative policy of providing stability and security for children and preventing arbitrary or frequent changes in custody. *See Brayden James*, 2007-Ohio-2335, at ¶ 26-29

(comparing language in R.C. 3109.04, which establishes the procedure for modifying custody orders between parents, with language in R.C. 2151.42(B)). But R.C. Ch. 2151 distinguishes between legal and permanent custody. And the court of appeals relied on an impermissible reading of R.C. 2151.42(B), ignoring the procedures for legal-custody dispositions set forth in other parts of R.C. Ch. 2151. *See* R.C. 2151.35(B)(2)(b) and 2151.353(A)(3); *compare* R.C. 2151.414. R.C. 2151.42(B) does not guarantee a parent like K.G., who is contesting the agency's request concerning legal custody of her children, with the same rights as those afforded parents in permanent-custody proceedings.

{¶ 23} And there are more reasons why *Hoffman*, 2002-Ohio-5368, does not support the proposition that K.G. had a right to cross-examine Dr. Wolfgang. *Hoffman* involved a different type of report—one prepared by a guardian ad litem. *Hoffman* at syllabus. A guardian ad litem plays a specific role in abuse, neglect, and dependency cases, *see* Sup.R. 48.02(C), and the guardian ad litem in *Hoffman* was present for and participated in the permanent-custody hearing, *Hoffman* at ¶ 5. The due-process challenge in *Hoffman* involved the trial court's refusal to allow the mother of the child whose permanent custody was at issue to call the guardian ad litem as a witness or to question her regarding the contents of her report. *Id.* at ¶ 24. This court determined in *Hoffman* that the mother's right to due process necessitated the right to cross-examine the guardian ad litem because the trial court had relied on the guardian ad litem's report in making its permanent-custody decision. *Id.* at ¶ 25. And the Rules of Superintendence for the Courts of Ohio governing guardians ad litem now require them to be available to testify at any relevant hearing. *See* Sup.R. 48.06(A)(4).

{¶ 24} Unlike the mother in *Hoffman*, K.G. was not *prevented* from questioning Dr. Wolfgang regarding his report. The agency did not need Dr. Wolfgang to testify at the hearing for the report to be admitted, as K.G. conceded at the hearing. Moreover, more than a year had elapsed between when the report

was filed with the court and when the legal-custody hearing took place. Yet nothing in the record suggests that K.G. attempted during that time to depose Dr. Wolfgang or to subpoena him to appear at a hearing. And if she did attempt to depose or subpoena Dr. Wolfgang, nothing in the record demonstrates that she was hindered from doing so. There is simply nothing in the record to demonstrate that K.G. was denied an opportunity to cross-examine Dr. Wolfgang.

{¶ 25} Finally, the record is devoid of any evidence that K.G. was harmed when the juvenile court considered Dr. Wolfgang's report under the procedures set forth in R.C. 2151.35(B) and Juv.R. 34(B). *See B.C.*, 2014-Ohio-4558, at ¶ 21-22 (noting that due-process analysis includes evaluating the risk that the procedure will erroneously deprive the person of his or her interest). The court of appeals reversed the juvenile court's legal-custody disposition without providing any basis for K.G.'s purported need to cross-examine Dr. Wolfgang. As a technical matter, the agency had already used portions of the report in its filings with the juvenile court, and the court had considered and incorporated portions of the report into its entry granting temporary custody to the maternal aunt. K.G. did not proffer, and the court of appeals did not fairly explain, why cross-examining Dr. Wolfgang at the legal-custody hearing would have been so critical that reversal of the juvenile court's judgment was warranted, despite the length of time that the report had been available and despite that the juvenile court had already considered and relied on the report.

### III. CONCLUSION

{¶ 26} The court of appeals erred in determining that K.G. was entitled to the same due-process rights as those afforded parents in permanent-custody proceedings. The record does not demonstrate that K.G. was denied an opportunity to cross-examine Dr. Wolfgang, the author of the report relied on by the juvenile court, nor does it explain why cross-examination would have been beneficial, let alone critical, to K.G.'s case. K.G.'s due-process rights were not violated when the

juvenile court considered Dr. Wolfgang's report under R.C. 2151.35(B) and Juv.R. 34(B).

**{¶ 27}** The judgment of the Fifth District is reversed, and this matter is remanded to that court for consideration of K.G.'s remaining assignment of error.

Judgment reversed

and cause remanded.

————————————

Ronald L. Welch, Muskingum County Prosecuting Attorney, and John Connor Dever, Assistant Prosecuting Attorney, for appellant.

Richard D. Hickson, for appellee.

————————————