[Cite as *In re A.O.*, 2025-Ohio-4923.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | No. 24AP-712 |
| [A.O., | : | (C.P.C. No. 21JU-5853) |
| M.O., Appellant]. | : | (ACCELERATED CALENDAR) |
| | : | |

D E C I S I O N

Rendered on October 28, 2025

**On brief:** *Tammi S. Bucci*, for National Youth Advocate Program.

**On brief:** *William T. Cramer*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

DINGUS, J.

{¶ 1} Appellant, M.O., putative father of A.O., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, awarding legal custody of A.O. to a family friend. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} A.O. is the youngest of five siblings born to V.R. ("mother") while she was married to J.R. ("legal father"). The legal father lives in Florida, and the children lived with their mother and M.O. in the years leading up to involvement with Franklin County Children Services and the National Youth Advocate Program (collectively, "the agency"). M.O. is the putative father of A.O. and is not the putative father of the other children. The rights and interests of A.O.'s mother, legal father, and siblings are not at issue in this appeal.

{¶ 3} The agency became involved with the children in response to reports of homelessness and substance abuse by both the mother and M.O., physical abuse by M.O.

against the mother, and physical abuse by the mother against one of A.O.'s siblings. The agency obtained a temporary order of custody for A.O. in February 2020. The agency's complaint alleged that A.O. was a dependent child. A.O. was placed in the care of K.R., a maternal family friend.

{¶ 4} The case plan for the family identified both the legal father and M.O. as parents. M.O.'s objectives under the case plan included completing a domestic violence assessment and following all recommendations, completing an alcohol and drug assessment and following all recommendations, participating in drug screening, and participating in housing services and following all recommendations. The trial court appointed a guardian ad litem ("GAL") and attorneys for A.O., the mother, and M.O.

{¶ 5} On September 21, 2021, the trial court entered a temporary order of court custody to the agency and adjudicated A.O. as a dependent minor. The GAL's reports leading up to the trial court's decision indicated that M.O. was attending most visitations with A.O. and he had been linked with a suboxone clinic and counseling services. However, M.O. was not compliant with most other case plan goals; M.O. had not appeared for any drug screens in 2021, and his drug screens in 2020 showed positive results for gabapentin, benzodiazepines, barbiturates, opiates, and THC. He did not complete a domestic violence assessment, and he reportedly argued that domestic violence services were not necessary because his criminal domestic violence charges had been dismissed. He had not obtained housing and continued to stay at friends' houses.

{¶ 6} In February 2022, the agency filed a motion to terminate temporary custody and recommended that the trial court place A.O. in the legal custody of her caregiver, K.R., pursuant to R.C. 2151.415(B). The agency asserted that this placement was in A.O.'s best interest because, among other reasons, M.O. had failed to comply with the case plan objectives related to domestic violence services, drug screens, the release of information to the case worker, and housing. After several continuances, the trial court scheduled hearings on the motion for October 2022.

{¶ 7} From February to August 2022, reports to the trial court indicated that M.O. was not working toward completing case plan objectives. He continued to miss drug screens and reportedly claimed that he had been railroaded into drug treatment, despite never having taken opiates in his life. M.O. finally completed a domestic violence

assessment but had not followed through on the subsequent requirement to attend classes. He repeatedly failed to work with housing services and was living in hotels and a co-worker's basement. A significant unpaid utility bill in the mother's name was potentially hampering their ability to obtain housing. By the end of September 2022, M.O. had begun to attend domestic violence classes and submitted to drug screenings, though the results showed inconsistent use of suboxone and occasional use of THC.

{¶ 8} The matter proceeded to a hearing before a magistrate. The first day of hearings took place on October 7, 2022, and included testimony by the caseworker and the GAL. The caseworker testified that M.O. was compliant with some of his case plan, including consistent visitation with A.O., mental health counseling, and consistent employment. However, the caseworker recommended against allowing A.O. to return to M.O.'s custody because M.O. had not adequately followed through with services, did not have stable housing, and did not comply with enough drug screens for the caseworker to be able to verify an adequate period of sobriety. He recommended granting legal custody to K.R. The GAL testified that A.O. is bonded with M.O. A.O. indicated that she wanted to live with her mother and M.O., and if that was not possible, she wanted to live with K.R. The GAL recommended that A.O. stay in K.R.'s custody as M.O. was only just beginning to work on various case plan objectives and was not in a position to take custody of A.O.

{¶ 9} A second day of hearings took place three weeks later, on October 28, 2022, and included testimony by M.O. and the mother. M.O. testified that he and the mother had secured an apartment a week and a half prior to the date of the second hearing and were in the process of obtaining furniture. He testified that the delay in finding housing from February 2020 to October 2022 was due to COVID and its effect on the economy. He testified that he has consistently complied with his suboxone prescription, though he thought he should not have been prescribed suboxone in the first place. He took opiates from 2004 to 2011 for injuries sustained from falling off a cliff but maintained he had not taken any opiates since 2011. He admitted to smoking marijuana and taking Xanax, though he claimed the Xanax was prescribed by a doctor. He testified that his work schedule prevented him from appearing for drug screens until August 2022. He testified that he completed a domestic violence assessment once it was added to the case plan and that his delay in following through with classes was due to a miscommunication.

{¶ 10} At the end of the second hearing day, the magistrate announced from the bench that she was awarding custody of A.O. to K.R.  M.O. requested findings of fact and conclusions of law in November 2022.  The magistrate filed her decision on January 6, 2023, which did not include findings of fact and conclusions of law.  M.O. filed objections to the magistrate's decision, and the trial court remanded the matter to the magistrate in April 2023 to provide findings of fact and conclusions of law.  The magistrate retired after the remand, and after various delays, the parties appeared before the trial court in April 2024 and consented to the court reviewing the transcripts and ruling on the objections without conducting further evidentiary hearings.  In November 2024, the court entered judgment overruling M.O.'s objections.

{¶ 11} The trial court noted the case plan objectives regarding A.O. included requirements that M.O. (1) participate in services related to domestic violence, (2) participate in services related to substance abuse, (3) comply with drug screening, (4) participate in services related to housing, (5) inform the caseworker of address changes, (6) sign releases of information regarding the foregoing services for the caseworker, (7) maintain stable housing, (8) provide for A.O.'s basic needs and safety, (9) meet with the caseworker every month, and (10) maintain visitations with A.O.  The court found that M.O. had complied with the requirements that he keep his address updated, meet with his caseworker, sign releases, establish the ability to provide for A.O. by maintaining employment, and visit consistently with A.O.  However, the court found that M.O. had failed to comply with the remaining requirements.  Specifically, M.O. did not move forward on a domestic violence assessment from February 2020 to March 2022, and he did not begin domestic violence classes until July or August 2022.  The record of repeated orders for M.O. to address domestic violence contradicted M.O.'s claim that domestic-violence-related services were only recently added to his case plan objectives.  M.O. refused to complete drug screens throughout most of his case plan.  When M.O. began to comply with drug screens starting in August 2022, he tested positive for THC and did not consistently test positive for suboxone, indicating that he was not complying with his drug treatment program.  He repeatedly refused to participate in services related to housing.  M.O. did not have a home from the beginning of the case in February 2020 until a week and a half before the final hearing date in October 2022; he had been moving between hotels and friends'

houses for over two and a half years while this case was pending.  Although M.O. had obtained housing at the last minute that had the *potential* to be stable, he did not establish actual stability.

{¶ 12}  After determining that A.O.'s mother and her legal father had likewise failed to substantially comply with their respective case plan goals, the trial court proceeded to consider A.O.'s best interests regarding placement.  The court noted A.O.'s first choice regarding placement was to be with her mother and M.O., her second choice was to remain with K.R., and her third and fourth choices were to be placed with other relatives.  It noted the GAL's recommendation that K.R. be awarded legal custody of A.O.  It also noted that K.R. had consistently coordinated visits between A.O.  and her siblings, her mother, M.O., and M.O.'s mother.  A.O. had lived with K.R. since March 2020, had bonded with K.R. and K.R.'s family, and was flourishing in her placement.  In contrast, M.O. and the mother had not completed their case plan objectives.  The court concluded that the magistrate did not err in finding that it was in A.O.'s best interest to grant legal custody to K.R.

{¶ 13}  M.O. filed a timely appeal, and the matter is now properly before this court.

## II.  Assignment of Error

{¶ 14}  M.O. assigns the following sole assignment of error for our review:

> The weight of the evidence does not support the juvenile court's decision to grant legal custody to a nonparent where the child wanted to reunify and the parents were ready for reunification.

## III.  Discussion

{¶ 15}  When, as here, a court adjudicates a child a dependent child and awards temporary custody of the child to an agency under R.C. 2151.353(A)(2), the temporary custody order eventually expires unless the agency files a motion requesting an extension or a disposition order under R.C. 2151.415.  R.C. 2151.353(G).  Among the dispositional orders that the agency may request is "[a]n order that the child be placed in the legal custody of a relative or other interested individual."  R.C. 2151.415(A)(3).  *See also* R.C. 2151.353(A)(3) (authorizing a trial court to award legal custody to an interested individual who has met certain requirements).

{¶ 16} An award of legal custody is significantly different than an award of permanent custody, as legal custody merely confers the right and responsibility for the care and supervision of the child, while "residual parental rights, privileges, and responsibilities"

remain intact. R.C. 2151.011(B)(21); 2151.353(A)(3)(c). A parent retaining residual rights has "far different procedural safeguards in [a] legal-custody proceeding than those that would be afforded a parent in a permanent-custody proceeding through which parental rights could be completely terminated." *In re R.G.M.*, 2024-Ohio-2737, ¶ 17. Unlike the clear and convincing burden of proof that applies to permanent custody proceedings, the burden in legal custody actions is merely a preponderance of the evidence. *In re G.H.*, 2016-Ohio-1188, ¶ 19 (10th Dist.); Juv.R. 29(E)(4). It is well settled that "a preponderance of evidence means the greater weight of evidence . . . The greater weight may be infinitesimal, and it is only necessary that it be sufficient to destroy the equilibrium." *Travelers' Ins. Co. v. Gath*, 118 Ohio St. 257, 261 (1928). *See also State ex rel. Doner v. Zody*, 2011-Ohio-6117, ¶ 54 (a preponderance of evidence indicates that the existence of a fact "is more likely than its nonexistence").

{¶ 17} The preponderance of the evidence standard of proof is generally subject to the manifest weight standard of review. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. An appellate court can reverse a judgment on manifest weight grounds only in exceptional circumstances where the evidence weighs heavily against the judgment. *State v. Thompkins*, 1997-Ohio-52, ¶ 25. And an appellate court cannot reverse a judgment on manifest weight grounds if it is "supported by some competent, credible evidence going to all the essential elements of the case." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. However, in the context of juvenile legal custody determinations, the trial court's award of legal custody has traditionally been subject to an abuse-of-discretion standard of review. *In re Gales*, 2003-Ohio-6309, ¶ 12 (10th Dist.); *In re Z.M.*, 2021-Ohio-3744, ¶ 33 (10th Dist.).[1] An appellate court can reverse a judgment for abuse of discretion only where the decision is unreasonable, arbitrary, or unconscionable. *State v. Beasley*, 2018-Ohio-16, ¶ 12.

{¶ 18} The two standards of review—abuse of discretion and manifest weight—differ in their application and focus. *See In re F.M.*, 2021-Ohio-3039, ¶ 16 (8th Dist.); *Jones v. Jones*, 2007-Ohio-4255, ¶ 32 (4th Dist.). There could possibly be some scenario in which

---

[1] The Supreme Court of Ohio has rejected the abuse-of-discretion standard of review in the context of permanent custody decisions, which involve the clear-and-convincing burden of proof. *In re Z.C.*, 2023-Ohio-4703, ¶ 18. However, the court in *Z.C.* declined to extend its holding to custody decisions that involve lesser burdens of proof. *See id*. at ¶ 12.

the two standards clash, but this case doesn't present an opportunity to explore that possibility; under either standard of review, the result is the same in this appeal.

{¶ 19} The trial court's decision to grant legal custody to a relative or other interested individual under R.C. 2151.415(A)(3) must be "in accordance with the best interest of the child as supported by the evidence." R.C. 2151.415(B). Following a dependency adjudication and a disposition awarding temporary custody to an agency, a trial court's decision to grant legal custody of the child to anyone—parent or nonparent—is based solely on the best interest of the child. *In re Z.M.* at ¶ 30; R.C. 2151.415(B); R.C. 2151.42(A) ("At any hearing in which a court is asked to modify or terminate an order of disposition . . . the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child.").

{¶ 20} The statutory scheme governing legal custody does not provide specific factors for a trial court to consider when determining the child's best interests, but it is generally appropriate for a trial court to consider the best interest factors contained in the statute governing the allocation of parental rights and responsibilities in divorce actions, R.C. 3109.04(F)(1). *See In re Z.M.* at ¶ 31, citing *In re I.M.*, 2013-Ohio-5549, ¶ 11-12 (10th Dist.), *In re C.W.*, 2020-Ohio-6849, ¶ 6 (2d Dist.), *In re A.L.H.*, 2010-Ohio-5425, ¶ 9 (12th Dist.), and *In re G.M.*, 2011-Ohio-4090, ¶ 14-16 (8th Dist.). When determining the best interest of a child, R.C. 3109.04(F)(1) instructs the trial court to "consider all relevant factors, including, but not limited to" an enumerated list. The factors within R.C. 3109.04(F)(1) that are relevant to a legal custody decision include

> (1) the wishes of the child's parents regarding the child's care; (2) the wishes and concerns of the child, as expressed to the juvenile court; (3) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (4) the child's adjustment to the child's home, school, and community; and (5) the mental and physical health of all persons involved.

*In re Z.M.* at ¶ 32, citing *C.W.* at ¶ 6.

{¶ 21} Some appellate courts have held that a trial court determining legal custody may also consider the best interest factors contained in the statute governing permanent custody determinations, R.C. 2151.414(D)(1). *See In re D.L.*, 2023-Ohio-1125, ¶ 15 (1st Dist.); *In re W.W.*, 2024-Ohio-878, ¶ 30 (4th Dist.). To determine the best interest of a

child, R.C. 2151.414(D)(1) directs the court to consider "all relevant factors," including those enumerated in R.C. 2151.414(D)(1)(a) through (e) and R.C. 2151.414(E)(7) through (11). The factors in R.C. 2151.414 relevant to a legal custody decision under R.C. 2151.353(A)(3) include (1) the child's interactions and interrelationship with family members, caregivers, and anyone else who significantly affects the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in temporary agency custody for over 12 of 22 months; (4) whether the parent has been convicted of certain criminal offenses; (5) whether the parent repeatedly withheld medical treatment or food from the child; (6) whether the parent put the child at a substantial risk of harm due to substance abuse; (7) whether the parent abandoned the child; and (8) whether the parent's rights were terminated regarding a sibling of the child.

{¶ 22} The relevant statutory scheme governing legal custody is silent regarding best-interest factors. *See* R.C. 2151.353; 2151.415(B); 2151.42(A). When facing such statutory silence, "we must presume that the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody." *In re G.M.* at ¶ 16. Accordingly, although the factors in R.C. 3019.04(F)(1) and 2151.414(D)(1) may be instructive on the issue of a child's best interests, the trial court is not required to consider those factors when determining legal custody.

{¶ 23} M.O. argues that the trial court's decision regarding A.O.'s best interests was against the manifest weight of the evidence because most of the foregoing best-interest factors weighed in favor of granting legal custody to M.O. rather than K.R. Specifically, M.O. notes that he and A.O. both wanted reunification and maintained a strong familial bond. He did not legally abandon A.O., and he does not have any criminal convictions related to abuse or neglect. He was consistently employed throughout the period of agency involvement, and there were no negative reports regarding M.O.'s interactions with family members, caretakers, or agency employees. Additionally, M.O. maintains he has "never gotten in trouble with the law." (Appellant's Brief at 19.) He claims there was no evidence to support concerns over alcohol and drug use, and he had no screens showing drug use apart from THC. He acknowledges that he did not have stable housing from the inception of temporary agency custody in February 2020 until the final hearing at the end of October

2022, but he contends that the COVID pandemic was to blame and notes that he obtained appropriate housing before the final hearing date.

{¶ 24} Although many of M.O.'s cited factors are undisputed, some do not appear to be supported by the record. For example, the factual allegations in the agency's complaint—which were uncontested and formed the basis for the trial court's dependency adjudication—indicate that M.O. has a history of one or more criminal convictions, including breaking and entering. The caseworker and GAL indicated that M.O. did not comply with drug screens for almost the entirety of the agency's involvement. When he appeared for screens during a short period in 2020, he tested positive for gabapentin, benzodiazepines, barbiturates, opiates, and THC. When he appeared for screens in August 2022, his results indicated that he was not complying with his suboxone regimen. The agency repeatedly attempted to link M.O. with services to find appropriate housing, but those services failed due to M.O.'s noncompliance.

{¶ 25} Additionally, M.O. fails to mention other factors that the trial court considered when determining A.O.'s best interests. Specifically, the court considered that the GAL recommended that A.O. be placed in K.R.'s legal custody. It noted that A.O. has lived with K.R. since March 2020 and has flourished under her care. K.R. has consistently facilitated visitation between A.O. and her parents, siblings, and other relatives. In contrast, M.O. did not complete domestic violence classes, comply with a drug treatment plan and drug screens, or establish stable housing.

{¶ 26} Based on our own thorough review of the evidence, we conclude that the record supports the trial court's findings regarding A.O.'s best interests. Although M.O. has identified a few factors that weigh in his favor, he did not establish that this is one of those exceptional cases where the evidence weighed heavily against the trial court's determination of A.O.'s best interests, nor did he establish that the determination of A.O.'s best interests was unreasonable, arbitrary, or unconscionable. The trial court's decision finding that A.O.'s best interests were served by awarding legal custody to K.R. was not against the manifest weight of the evidence and did not involve an abuse of discretion. Accordingly, we reject M.O.'s sole assignment of error.

**IV. Conclusion**

{¶ 27}  Having overruled M.O.'s sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgment affirmed.*

MENTEL and BOGGS, JJ., concur.

———————————————